Geoffrey S. Kercsmar (#20528)
Gregory B. Collins (#023158)
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, AZ 85250
Tel: (480) 421-1001
gsk@kflawaz.com
gbc@kflawaz.com

Paul J. Orfanedes
(Motion for admission *pro hac vice* to be filed)
James F. Peterson
(Motion for admission *pro hac vice* to be filed)
Michael Bekesha
(Motion for admission *pro hac vice* to be filed)
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172

*Attorneys for Proposed Intervenor/Defendant Russell Pearce*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>The State of Arizona; and Janice K. Brewer, Governor of the State of Arizona, in her Official Capacity,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:10-cv-01413-SRB<br><br><br>**LODGED: *AMENDED* PROPOSED MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - ATTACHED** |

Geoffrey S. Kercsmar (#20528)
Gregory B. Collins (#023158)
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, AZ  85250
Tel:  (480) 421-1001
gsk@kflawaz.com
gbc@kflawaz.com

Paul J. Orfanedes
(Motion for admission *pro hac vice* to be filed)
James F. Peterson
(Motion for admission *pro hac vice* to be filed)
Michael Bekesha
(Motion for admission *pro hac vice* to be filed)
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC  20024
Tel:  (202) 646-5172

*Attorneys for Proposed Intervenor/Defendant Russell Pearce*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| The United States of America, | ) | Case No.: 2:10-cv-01413-SRB |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | **[PROPOSED] MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| The State of Arizona; and Janice K. Brewer, Governor of the State of Arizona, in her Official Capacity, | ) ) ) ) | |
| Defendants. | ) ) ) | |

State Senator Russell Pearce, by counsel, respectfully submits this Memorandum

in Response to Plaintiff's Motion for Preliminary Injunction.  As grounds therefor,

Senator Pearce states as follows:

## I.      Introduction

The law of this Circuit is clear.  In 1983, the U.S. Court of Appeals for the Ninth Circuit held that nothing in federal law precludes a city from enforcing the criminal provisions of immigration law.  *Gonzalez v. City of Peoria*, 722 F.2d 468, 476 (9th Cir. 1983).  By enacting Senate Bill 1070, as amended by House Bill 2162 ("SB 1070"), the Arizona legislature simply codified already existing enforcement provisions of federal law that has been the law of the land in some cases for more than 50 years.  By seeking to enjoin Sections 1-6 of SB 1070 from taking effect, Plaintiff seeks to overturn 20 years of precedent.  Plaintiff also asks that this Court ignore Congress' intentions that states and localities play a vital role in immigration enforcement efforts.  If such requests were not bold enough, Plaintiff's effort comes as a facial challenge for which it must prove that under no set of circumstances could SB 1070 be constitutional.  Finally, Plaintiff simply ignores many provisions of Sections 1-6 without discussing whether those provisions may be preserved even in the unlikely event that this Court was to find that some portion of the challenged sections were preempted.  Plaintiff's motion is without merit and a preliminary injunction is not warranted.

## II.     Background

On April 23, 2010, Defendant Janice K. Brewer, Governor of the State of Arizona, signed Senate Bill 1070 into law.  On April 30, 2010, Governor Brewer signed House Bill 2162, which amended various provisions of Senate Bill 1070.  SB 1070 is scheduled to take effect on July 29, 2010.

Plaintiff, the United States of America, filed its Complaint on July 6, 2010, asserting that Sections 1-6 of SB 1070 violate the Supremacy Clause of the United States Constitution, are preempted by federal law, and violate the Commerce Clause of the United States Constitution.  Sections 1, 4, and 6 of SB 1070 remain the same.  Sections 2, 3, and 5 were amended by HB 2162.  SB 1070 Section 2 is now HB 2162 Section 3, SB 1070 Section 3 is now HB 2162 Section 4, and SB 1070 Section 5 is now HB 2162 Section 5.  To avoid confusion, this memorandum will refer to all sections as found in SB 1070.

Also on July 6, 2010, Plaintiff filed a Motion for Preliminary Injunction ("Mot.") requesting that this Court preliminarily enjoin enforcement of SB 1070 to preserve the status quo until this matter can be adjudicated.  It is that motion to which Senator Pearce now responds.  As demonstrated herein, Plaintiff will not and cannot succeed on the merits, and therefore, a preliminary injunction is not warranted.

III.    **Argument**

A.    **Facial challenges are the most difficult challenges to mount.**

Plaintiff does not address whether it is attempting to bring a facial or an "as applied" challenge to SB 1070.  Nonetheless, it is obvious that Plaintiff brings a facial challenge, which is generally disfavored by the courts because such challenges rest only on speculation, run contrary to the fundamental principal of judicial restraint, and threaten to "short circuit" the democratic process.  *Washington State Grange v, Washington State Republican Party*, 552 U.S. 442, 449 (2008).  Significantly, a facial

challenge has been described as "the most difficult challenge to mount successfully." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).

The Supreme Court's disfavor toward facial challenges and its rationale for the heavy burden placed on persons advancing such challenges is manifest. When a legislative enactment is facially attacked, a court is at a disadvantage because it does not know how the law will be applied or construed by an enforcing authority. The law might be applied or construed in such a way as to avoid any constitutional issues. As the Supreme Court has stated, "It is neither our obligation nor within our traditional institutional role to resolve questions of constitutionality with respect to each potential situation that might develop." *Gonzalez v. Carhart*, 550 U.S. 124, 168 (2007). Instead of playing a game of hypotheticals, as Plaintiff too often does in its memorandum, courts prefer to wait until the law is construed "in the context of actual disputes." *Washington State Grange*, 552 U.S. at 450. A court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Salerno*, 481 U.S. at 745. "Exercising judicial restraint in a facial challenge frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *Id.*

Because of the strong disfavor toward facial challenges, courts "impose[] a 'heavy burden' on the plaintiffs." *Id.* ("the fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.").

A court cannot find a statute to be facially unconstitutional unless every reasonable interpretation of the statute would be unconstitutional. *Id.; see also City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796-97 (1984). Conversely, to defeat a facial challenge under the Supremacy Clause, a party need "merely to identify a possible application" of the state law not in conflict with federal law. *Baltimore and Ohio Railroad Co. v. Oberly*, 837 F.2d 108, 116 (3d Cir. 1988) (quoting *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987)). In other words, unlike an "as applied" challenge, in which the plaintiff applies specific facts to the challenged statute, a facial challenge must show that "no set of circumstances exists under which the [statute] would be valid." *Washington State Grange*, 552 U.S. at 449. In other words, the law must be unconstitutional under any set of facts or in all of its applications. *Id.*

By filing the Complaint and Motion for Preliminary Injunction prior to SB 1070's effective date, Plaintiff asks this Court to do precisely what the Supreme Court has warned against—to make a premature interpretation and an unnecessary pronouncement on the constitutionality of SB 1070. Plaintiff has not and cannot prove that all applications of SB 1070 would cause all provisions of Sections 1-6 to be unconstitutional. For this reason alone, a preliminary injunction is not warranted.

**B.      SB 1070 is not preempted by Federal Law.**

Plaintiff argues that SB 1070 is preempted because it is an unlawful attempt to set immigration policy at the state level and conflicts with federal law. While the framework for preemption analysis is not always precise, *Crosby v. Nat'l Foreign Trade Council*,

530 U.S. 363, 373 (2000), Plaintiff nonetheless fails to establish preemption under any plausible framework. On the contrary, SB 1070 falls within the well-recognized authority of the states, does not regulate immigration, and is in no way an obstacle to the enforcement of federal immigration law.

### i.      SB 1070 falls within the well-recognized authority of a state.

The law of this Circuit is clear. The Ninth Circuit has squarely held that nothing in federal law precludes a city from enforcing the criminal provisions of immigration law. *Gonzalez*, 722 F.2d at 476. Similarly, the Supreme Court has held that "the States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal." *Plyler* v. *Doe*, 457 U.S. 202, 225 (1982) (*citing De Canas* v. *Bica*, 424 U.S. 351 (1975)). SB 1070 simply codifies already existing enforcement provisions of federal law. SB 1070 mirrors Congress' objectives and furthers the legitimate goals set forth by Congress.

### ii.      SB 1070 does not regulate immigration.

Although the federal government has the power to regulate immigration, the mere fact that "aliens are the subject of a state statute does not render it a regulation of immigration." *De Canas*, 424 U.S. at 352-353. Regulation of immigration is "a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id*. at 355; *Toll* v. *Moreno*, 458 U.S. 1, 10 (1982) ("The authority to 'control immigration' is the power to 'admit or exclude aliens.'"). SB 1070 plainly does not impose new restrictions on the manner in which an

alien enters the country.  Nor does it create any new requirements for such individuals to remain in the country.  It certainly does not impose new conditions under which a legal entrant may remain in the country.  SB 1070 simply codifies already existing *enforcement* provisions of federal law.

### iii.    SB 1070 is not an obstacle to the enforcement of federal immigration law.

SB 1070 does not conflict with or stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *U.S. v. Locke*, 529 U.S. 89, 109 (2000).  SB 1070, in fact, "mandates compliance with the federal immigration laws" and therefore cannot "stand[] as an obstacle to [the] accomplishment and execution of congressional objectives."  *In re Jose C.*, 198 P.3d 1087, 1100 (2009).  As shown below, applying specific facts to SB 1070 demonstrates that the statute does "not impair federal regulatory interests" and therefore "concurrent enforcement activity is authorized." *Gonzales*, 722 F.2d at 474.

### iv.    Applications of SB 1070 show that it is not preempted by federal law.

Plaintiff seeks to enjoin only Sections 1-6 of SB 1070 from taking effect.  Yet, Plaintiff does not allege that in all circumstances these sections are preempted by federal law.  A few applications in which Sections 1-6 are not preempted follow.

Plaintiff argues that Section 2 is preempted by federal law because it mandates that "state and local law enforcement officers effectuate an immigration status verification scheme."  Mot. at 25.  On its face, however, Section 2 does nothing more

than codify that Arizona state and local law enforcement officers have "the same discretion to decide whether to verify immigration status during the course of a lawful stop as any other state or federal law enforcement officer." *Id.* The requirement is far from mandatory. An officer has substantial discretion in two instances.

First, an officer must only make a "reasonable attempt . . . to determine the immigration status of a person during the course of a lawful stop." Such an attempt could be no more than asking the individual for his name, date and place of birth, and immigration status. Such questioning has already been held to be constitutional. *See Muehler v. Mena,* 544 U.S. 93 (2005). If the individual's response is insufficient, the officer may contact the Law Enforcement Support Center ("LESC"). Declaration of David C. Palmatier ("Palmatier Decl."), attached as Exhibit 3 to Mot., at 3. LESC even prioritizes requests for information "that are time sensitive, such as roadside traffic stops." *Id.* at 7. On its face, Section 2 simply codifies what Plaintiff already acknowledges is common practice.

Second, an officer must only make a reasonable attempt to determine immigration status if it is practicable. There are many instances in which an officer may find it impracticable. The simplest instance is a traffic stop on a busy street. If an officer lawfully stops an individual for running a red light in downtown Phoenix during rush hour, the officer may issue the individual a citation and ask the individual for his name, date and place of birth, and immigration status. However, the officer may also simply issue the individual a citation. Due to the high volume of traffic, the officer may

determine that it is not practicable to have two vehicles sitting in a lane or on the shoulder

of the road for any additional period of time, regardless of the length of time.  An officer

may also find it impracticable to ask a witness or victim about his immigration status.

Because of any number of scenarios in which Section 2 is not mandatory and does not

conflict with federal law, Section 2 must survive a facial challenge of preemption.

Furthermore, federal law does not preempt Section 3, which does nothing more

than codify into state law the authority of state and local law enforcement to enforce

Sections 1304(e) and 1306(a) of Title 8 of the United States Code.  As stated above, this

Circuit has already recognized that state and local law enforcement may enforce

provisions of federal criminal law.  *Gonzalez*, 722 F.2d at 476.  Plaintiff attempts to

present hypotheticals in which Section 3 conflicts with federal law because "aliens who

are lawfully in the United States or seeking lawful status will not be provided

documentation that satisfies federal regulations governing registration."  Mot. at 38.  Yet,

such scenarios ignore the plain language of Section 3, which states that it "does not apply

to a person who maintains authorization from the federal government to remain in the

United States."  If a legal alien either forgets his registration documentation at home, was

not required to obtain registration documentation, or otherwise has authorization from the

federal government to remain in the United States, the individual would not be in

violation of Section 3.  Since Section 3 does not apply to individuals who maintain

authorization from the federal government, state and local law enforcement only have the

authority to enforce violations of Sections 1304(e) and 1306(a).  Therefore, Section 3 must survive a facial challenge of preemption.

Section 4 of SB 1070 makes only minor modifications to Ariz. Rev. Stat. § 13-2319, which was first enacted in 2005.  The amendment solely codifies the general practice that a law enforcement officer "may lawfully stop any person who is operating a motor vehicle if the officer has reasonable suspicion to believe that the person is in violation of any traffic law."  SB 1070, § 4(E).  Plaintiff itself concedes that Section 4 only amends a preexisting statute.  But Plaintiff fails to account for last year's decision by this Court that concluded that Section 13-2319 is constitutional.  *We are America v. Maricopa County Bd. of Supervisors*, 594 F. Supp. 2d 1104 (D. Ariz. 2009).  In that case, Senior Judge Broomfield held that Section 13-2319 was not preempted by federal law and that "there is 'little question that a state has a vital interest in the enforcement of its criminal laws.'"  *Id.* at 1114 (*quoting We Are America v. Maricopa County Bd. of Supervisors*, 2007 U.S. Dist. LEXIS 70689, *9 (D. Ariz. Sept. 21, 2007)).  Since Section 4 of SB 1070 has no effect on this Court's very recent holding, Plaintiff has not shown how or why this minor amendment to Section 13-2319 should yield a different result.

Finally, Plaintiff argues that Section 6 "mandate[s] that state and local law enforcement officers effectuate an immigration status verification scheme" (Mot. at 25) and is preempted because it will lead "to further harassment of lawfully present aliens."  Mot. at 32.  Similar to Section 4, Section 6 amends an existing Arizona statute.  Section 6 simply authorizes an officer to arrest an individual without a warrant if the officer has

probable cause to believe that "[t]he person to be arrested has committed any public offense that makes the person removable from the United States."  Exactly how this provision mandates an immigration status verification scheme or will lead to harassment of legal aliens is unexplained.  Since Plaintiff brings a facial challenge, it must show that in all of its applications, Section 6 would be preempted by federal law.  Yet, in at least one obvious circumstance, Section 6 would not conflict with federal law.  If an officer runs an individual's name through the National Crime Information Center database, part of any information that the officer would receive from the federal government indicates whether the individual is an "immigration absconder," a person who has been ordered removed but has absconded.  Palmatier Decl. ¶ 3.  In other words, a state or local law enforcement officer does not need to "determine whether the commitment of a crime . . . would render the alien removable" or "engage in [a] complicated analysis of removability."  Mot. at 33.  An administrative judge would have already determined that the alien had committed a removable offense and ordered the alien's removal.[1]  Consequently, Section 6 also survives a facial challenge of preemption.

> **C.**     **Federal law recognizes the key role of states and localities in immigration enforcement.**

---

[1]  Pursuant to federal law, it is a federal criminal felony for an individual "against whom a final order of removal is outstanding" to "willfully fail[] or refuse[] to depart."  8 U.S.C. § 1253(a).  Therefore, even prior to the enactment of Section 6, an officer had the authority to arrest an individual without a warrant for committing a felony.  Ariz. Rev. Stat. §13-3883(A)(1).  *See also Gonzalez*, 722 F.2d at 475 ("[F]ederal law does not preclude local enforcement of the criminal provisions" of federal immigration law.).

Congress has made plain its view of the vital role that states and localities play in assisting federal officials with immigration enforcement efforts.  While Plaintiff makes passing reference to this cooperation (*see* Mot. at 6-7), Congress has made clear that it views the assistance of states and localities as essential to successful enforcement of the nation's immigration laws.

The most obvious examples of this cooperative relationship are set forth in two federal statutes, 8 U.S.C. §§ 1373 and 1644, both of which are unmistakable federal mandates requiring cooperation through the free flow of information regarding a person's immigration status.  Section 1373(a) expressly states that state and local government entities "may not prohibit or in any way restrict" a government official from "sending to or receiving from [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).

The legislative history of the statutes reflects a clear congressional view as to the importance of cooperation through the exchange of information between states and localities and federal immigration officials regarding a person's immigration status. Congress enacted 8 U.S.C. § 1644 in August 1996 as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.  One month later, Congress enacted a companion statute, 8 U.S.C. § 1373, as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  The Senate Report accompanying the bill that became IIRIRA explains that the provision:

Prohibits any restriction on the exchange of information between the Immigration and Naturalization Service and any Federal, State, or local agency regarding a person's immigration status. ***Effective immigration enforcement requires a cooperative effort between all levels of government. The acquisition, maintenance, and exchange of immigration-related information by State and local agencies is consistent with, and potentially of considerable assistance to, the Federal regulation of immigration*** and the achieving of the purposes and objectives of the Immigration and Nationality Act.

S. Rep. No. 104-249, 19-20 (1996) (emphasis added).

It is difficult to conceive of how Congress could have expressed its goal of cooperation between federal immigration officials and state and local law enforcement authorities any more clearly than when it enacted these statutes. As one commentator has observed:

The assistance of state and local law enforcement agencies can also mean the difference between success and failure in enforcing the nation's laws generally. The nearly 800,000 police officers nationwide represent a massive force multiplier. This assistance need only be occasional, passive, voluntary, and pursued during the course of normal law enforcement activity. The net that is cast daily by local law enforcement during routine encounters with members of the public is so immense that it is inevitable illegal aliens will be identified.

Kris W. Kobach, *The Quintessential Force Multiplier: The Inherent Authority of Local Police to Make Immigration Arrests*, 69 Alb. L. Rev. 179, 181 (February 2006). State and local law enforcement officers are "the eyes and ears of law enforcement across the United States." *Id.* at 183. Federal immigration officers simply cannot cover the same ground (*id.*), and Congress obviously recognized the substantial benefits to the

enforcement of federal immigration that could result from the free flow of information between local, state, and federal law enforcement officials.  Congress sought to promote this voluntary sharing by enacting Sections 1373 and 1644.

Congress' mandate of a cooperative role between federal and state and local law enforcement is further demonstrated in other federal statutes.  Section 1324(c) provides that:

> No officer or person shall have authority to make any arrests for a violation of any provision of this section except officers and employees of the Service designated by the Attorney General, either individually or as a member of a class, and **all other officers whose duty it is to enforce criminal laws**.

8 U.S.C. §1324(c) (emphasis added).  The U.S. Court of Appeals for the Ninth Circuit has unequivocally held that the "all other officers" provision allows for state law enforcement to specifically enforce the criminal provisions of federal immigration law. *See Gonzalez*, 722 F.2d at 476.  Other courts have similarly observed how federal law "evinces a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws."   *U.S. v. Santana-Garcia*, 264 F.3d 1188, 1193 (10th Cir. 2001) (*citing U.S. v. Vasquez-Alvarez*, 176 F.3d 1294, 1300 (10th Cir. 1999)).

Notably, Plaintiff cites to 8 U.S.C. § 1357g (1)-(9) (commonly referred to as the "287(g) program") (Mot. at 6), under which state and local officers, under agreements between federal and state and local authorities, may be trained to perform certain

immigration-related enforcement functions.  Plaintiff specifically omits reference to

section 10 of the same statute, which provides that:

> Nothing in this subsection shall be construed to require an
> agreement under this subsection in order for any officer or
> employee of a State or political subdivision of a State –
>> (A) to communicate with the Attorney General
>> regarding the immigration status of any individual,
>> including reporting knowledge that a particular alien is
>> not lawfully present in the United States; or
>> (B) otherwise *to cooperate with the Attorney General
>> in the identification, apprehension, detention, or
>> removal of aliens not lawfully present in the United
>> States.*

8 U.S.C. § 1357(g)(10) (emphasis added).  This provision again demonstrates the

cooperative relationship in immigration enforcement that Congress has mandated.  This

relationship, as recently described by the California Supreme Court, is "a regime of

cooperative federalism, in which local, state, and federal governments may work together

to ensure the achievement of federal criminal immigration policy."  *In re Jose C.*, 45 Cal.

4th 534, 554, 198 P.3d 1087, 1100 (2009).  *See also* 8 U.S.C. § 1252c(b) (mandating that

the Attorney General "shall" cooperate with the states to assure that information that

would assist state law enforcement officials in arresting and detaining "an alien illegally

present in the United States" under certain conditions is made available to such officials).

In view of this clear cooperative relationship, the U.S. Department of Justice's

Office of Legal Counsel has previously confirmed the important role of states and

localities in immigration enforcement.  *See* U.S. Department of Justice, Office of Legal

Counsel, *Non-preemption of the authority of state and local law enforcement officials to*

– 15 –

*arrest aliens for immigration violations* (dated April 3, 2002).  This memorandum recognizes that states have "inherent power" to make arrests for violations of federal law and that 8 U.S.C. § 1252c does not preempt State authority to arrest for certain federal violations.

### D.   Provisions of SB 1070 can be severed.

If this Court were to find that any specific provision of Sections 1-6 of SB 1070 is unconstitutional on its face, this Court should enjoin only that specific provision from the statute.  In Arizona, the "law regarding severability is well-settled."  *State Compensation Fund v. Symington*, 848 P.2d 273, 280 (Ariz. 1993).  "An entire statute need not be declared unconstitutional if constitutional portions can be separated."  *Id.*  To determine whether constitutional portions can be separated from those deemed invalid, a court must ascertain legislative intent.  The determination to be made is whether "it can be determined from the language that the voters would have enacted the valid portions absent the invalid portion."  *Ruiz v. Hull*, 957 P.2d 984, 1002 (Ariz. 1998) ("A statute or provision is severable if the valid and invalid portions are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other and if the invalid portion was not the inducement for the passage of the entire act." (quoting *Campana v. Arizona State Land Dep't*, 860 P.2d 1341, 1347 (Ariz. 1993)).  In this instance, not only does each provision stand on its own, the legislature clearly and explicitly stated, "If a provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or

applications of the act . . . and to this end the provisions of this act are severable."  SB 1070, § 12.  Since Plaintiff only challenges specific provisions of Sections 1-6 of SB 1070, the existence of long-standing Arizona precedent and the severability provision in SB 1070 demonstrate that only those specific provisions deemed unconstitutional should be enjoined.

**IV.    Conclusion**

For the forgoing reasons, Senator Pearce respectfully requests that this Court deny Plaintiff's motion for a preliminary injunction in its entirety.

Dated: July 20, 2010                              Respectfully Submitted,

KERCSMAR & FELTUS PLLC

By:    /s/ Geoffrey S. Kercsmar
       Geoffrey S. Kercsmar (#20528)
       Gregory B. Collins (#023158)
       6263 N. Scottsdale Road, Suite 320
       Scottsdale, AZ  85250
       Tel:  (480) 421-1001

       Paul J. Orfanedes
       (Motion for admission *pro hac vice* to be filed)
       James F. Peterson
       (Motion for admission *pro hac vice* to be filed)
       Michael Bekesha
       (Motion for admission *pro hac vice* to be filed)
       JUDICIAL WATCH, INC.
       425 Third Street, S.W., Suite 800
       Washington, DC  20024
       Tel:  (202) 646-5172

*Attorneys for Proposed Intervenor/Defendant
Russell Pearce*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2010, I electronically transmitted the foregoing to

the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of

Electronic Filing to the following:

Plaintiff United States of America
Represented by Joshua Wilkenfeld
joshua.i.wilkenfeld@usdoj.gov

Edwin S. Kneedler
Edwin.S.Kneedler@usdoj.gov

Varu Chilakamarri
varudhini.chilakamarri@usdoj.gov

Defendant State of Arizona and Janice K.
Brewer, Governor of the State of Arizona
Represented by John J. Bouma
jbouma@swlaw.com

Joseph G. Adams
jgadams@swlaw.com

Joseph Andrew Kanefield
jkanefield@az.gov

Robert Arthur Henry
bhenry@swlaw.com

Amicus Center on the
Administration of Criminal Law
Represented by Anne Milgram
anne.milgram@nyu.edu

Anthony S. Barkow
anthony.barkow@nyu.edu

Ellen London
elondon@fklaw.com

Jessica Alexandra Murzyn
jmurzyn@fklaw.com

Ricardo Solano, Jr.
rsolano@kflaw.com

Timothy J. Casey
SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Special Assistant Attorney General for Michigan
For *Amici Curiae* Michigan, Florida, Alabama,
Nebraska, Northern Mariana Islands, Pennsylvania,
South Carolina, South Dakota, Texas and Virginia
timcasey@azbarristers.com

Carolyn B. Lamm *(pro hac vice)*
Stephen N. Zack *(pro hac vice)*
Sara Elizabeth Dill *(pro hac vice)*
Andrew Silverman *(pro hac vice)*
American Bar Association
clamm@whitecase.com
szack@bsfllp.com
sdill@pkjlaw.com

Joseph M. Livermore
University of Arizona
James E. Rogers
College of Law
silverman@law.arizona.edu

Barnaby W. Zall
American Unity Legal Defense Fund, Inc.
bzall@aol.com

Stephen G. Montoya
stephen@montoyalawgroup.com
april@montoyalawgroup.com

Donald M. Peters
Kristin Mackin

Jeffrey T. Murray
Attorneys for Arizona Municipal
Risk Retention Pool
dpeters@lasotapeters.com
kmackin@lasotapeters.com
jtmurray@lawms.com

D. Q. Mariette Do-Nguyen
Kingdom of Heaven
D.Q_Mariette@wdcic.org

In addition a COURTESY COPY was mailed this day to:
HONORABLE SUSAN R. BOLTON
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 522
401 West Washington Street
SPC 50
Phoenix, Arizona 85003-2153

Notice will be sent by other means to those listed below if they are affected by this filing:
B. Eric Restuccia
Office of the Attorney General
P.O. Box 30212
Lansing, MI 48909

James F. Peterson
Judicial Watch Inc.
425 3rd St SW
Ste. 800
Washington, DC 20024

Mark Sands
Office of the Attorney General
P.O. Box 30212
Lansing, MI 48909

Paul J. Orfanedes

Judicial Watch Inc.
425 3rd St SW
Ste. 800
Washington, DC 20024

Ray Elbert Parker
P.O. Box 320636
Alexandria, VA 22320


By   *s/ Geoffrey S. Kercsmar*