John J. Bouma (#001358)
Robert A. Henry (#015104)
Joseph G. Adams (#018210)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Phone: (602) 382-6000
Fax: (602) 382-6070
jbouma@swlaw.com
bhenry@swlaw.com
jgadams@swlaw.com

Joseph A. Kanefield (#015838)
Office of Governor Janice K. Brewer
1700 W. Washington, 9th Floor
Phoenix, AZ  85007
Telephone: (602) 542-1586
Fax: (602) 542-7602
jkanefield@az.gov

*Attorneys for Defendants Janice K. Brewer, Governor of the
State of Arizona, and the State of Arizona*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>The State of Arizona; and Janice K. Brewer, Governor of the State of Arizona, in her Official Capacity,<br><br>          Defendants. | No. 10-CV-01413-PHX-SRB<br><br>**DEFENDANTS' MOTION TO DISMISS** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Janice K. Brewer ("Governor Brewer") and the State of Arizona move to dismiss plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim upon which relief may be granted.  Plaintiff seeks to enjoin enforcement of Sections 1 through 6 of the "Support Our Law Enforcement and Safe Neighborhoods Act," as amended ("SB 1070" or the "Act") on the grounds that these sections allegedly violate the Supremacy Clause and that Section 5 also allegedly violates the Commerce Clause.  Plaintiff's challenges to SB 1070 either misconstrue the applicable law or improperly rely on hypothetical scenarios that cannot, as a matter of law, sustain plaintiff's facial challenge to the Act.  Plaintiff's Complaint should be dismissed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND

### A.     Congress' Regulation of Immigration

The Immigration and Nationality Act ("INA"), which Congress originally enacted in 1952,[1] is codified in Title 8, Chapters 12-15 of the United States Code.  *See* 8 U.S.C. §§ 1103 through 1778.  The INA generally regulates the conditions upon which aliens may enter and remain in the country and, with limited exceptions, charges the Secretary of the Department of Homeland Security ("DHS") with the administration and enforcement of the nation's immigration and naturalization laws.  *See* 8 U.S.C. § 1103.

Congress has amended provisions of the INA at least a dozen times since 1952.[2] In doing so, Congress has repeatedly encouraged cooperation between federal, state, and local authorities in the enforcement of federal immigration laws.  *See*, *e.g.*, 8 U.S.C. § 1644 ("Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or

---

[1] *See* Pub. L. 414, 182 Stat. 66.

[2] *See* Pub. L. 97-359, 96 Stat. 1716 (Oct. 22, 1982); Pub. L. 99-603, 100 Stat. 3359 (Nov. 6, 1986); Pub. L. 99-639, 100 Stat. 3537 (Nov. 10, 1986); Pub. L. 101-649, 104 Stat. 4978 (Nov. 29, 1990); Pub. L. 102-232, 105 Stat. 1733 (Dec. 12, 1991); Pub. L. 103-416 108 Stat. 4305 (Oct. 25, 1994); Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996); Pub. L. 104-193, 110 Stat. 2105 (Aug. 21, 1996); Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996); Pub. L. 107-56, 115 Stat. 272 (Oct. 26, 2001); Pub. L. 107-296, 116 Stat. 2155 (Nov. 25, 2002).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   receiving from the [ICE] information regarding the immigration status, lawful or

2   unlawful, of an alien in the United States."); 8 U.S.C. § 1373 (prohibiting restrictions on

3   communications between federal, state, and local law enforcement officers regarding an

4   individual's immigration status and requiring ICE to "respond to an inquiry by a Federal,

5   State, or local government agency, seeking to verify or ascertain the citizenship or

6   immigration status of any individual within the jurisdiction of the agency for any purpose

7   authorized by law, by providing the requested verification or status information)."[3]

8       Despite these numerous provisions that provide for state involvement in enforcing

9   immigration laws, the INA contains only two provisions that expressly preempt state law

10  in specific areas.  *See* 8 U.S.C. § 1324a(h)(2) (preempting "any State or local law

11  imposing civil or criminal sanctions (other than through licensing and similar laws) upon

12  those who employ, or recruit or refer for a fee for employment, unauthorized aliens"); 8

13  U.S.C. § 1188(h)(2) (stating that the provisions of 8 U.S.C. §§ 1188 and 1184(a) and (c),

14  which relate to the admission of temporary workers, "preempt any State or local law

15  regulating admissibility of nonimmigrant workers").

16      **B.      Arizona's Enactment of SB 1070**

17      On April 23, 2010, Governor Brewer signed SB 1070 into law to ensure "the

18  cooperative enforcement of federal immigration laws" that Congress encouraged by

19  enacting 8 U.S.C. §§ 1357(g)(10), 1373, and 1644.  *See* SB 1070, § 1; Compl. ¶ 33.  On

20  April 30, 2010, Governor Brewer signed HB 2162, which amended SB 1070.  Compl. ¶

21  35.  SB 1070, as amended, is scheduled to take effect on July 29, 2010.  The provisions

22  of SB 1070 at issue are Section 1, which is the Arizona Legislature's stated purpose in

---

[3] Congress enacted 8 U.S.C. § 1373 based on its finding that "the acquisition, maintenance, and exchange of immigration-related information by State and local agencies *is consistent with, **and potentially of considerable assistance to**, the Federal regulation of immigration and the achieving of the purposes and objectives of the [INA].*" S. Rep. No. 104-249, at 19-20 (1996) (emphasis added).  *See also* 8 U.S.C. § 1357(g) (authorizing agreements between the Attorney General and state and local governments to qualify state and local law enforcement officers to function as immigration officers and recognizing that no such agreement is required for state and local law enforcement officers or agencies to communicate with the Attorney General regarding individuals' immigration status "*or . . . **otherwise to cooperate*** with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States") (emphasis added).

11783904

1    enacting SB 1070, and Sections 2 through 6.  *See* Compl. ¶¶ 61-68.

2                   **1.    Section 2 (A.R.S. § 11-1051)**

3         Section 2 of SB 1070 has twelve subsections.  *See* A.R.S. § 11-1051(A)-(L).

4    Plaintiff purports to challenge all of Section 2, but addresses only subsections B and H in

5    its Complaint.  *See* Compl. ¶¶ 40-45.  Subsection B states, in pertinent part:

6         For any lawful stop, detention ***or arrest*** made by a law enforcement official
          or a law enforcement agency of this state . . . in the enforcement of any
7         other law or ordinance of a county, city or town or this state where
          ***reasonable suspicion*** exists that the person is an alien ***and*** is unlawfully
8         present in the United States, a reasonable attempt shall be made, when
          practicable, to determine the immigration status of the person, except if the
9         determination may hinder or obstruct an investigation.  Any person who is
          arrested shall have the person's immigration status determined before the
10        person is released.[4]  The person's immigration status shall be verified with
          the federal government pursuant to 8 [U.S.C. §] 1373(c). . . .

11

12   A.R.S. § 11-1051(B) (emphasis added).[5]  A.R.S. § 11-1051(H) permits "[a] person who is

13   a legal resident of [Arizona] . . . [to] bring an action in superior court to challenge any

14   official or agency of this state or a county, city, town or other political subdivision of this

15   state that adopts or implements a policy that limits or restricts the enforcement of federal

16   immigration laws . . . to less than the full extent permitted by federal law."

17                  **2.    Section 3 (A.R.S. § 13-1509)**

18        A.R.S. § 13-1509 reinforces and mirrors federal law: "In addition to any violation

19   _____

20   [4] This sentence should be read – consistent with the first sentence in subsection (B) – to
     apply only where a law enforcement officer has reasonable suspicion to believe that the
     person arrested is an alien and is unlawfully present in the country.  *See, e.g., United*
21   *Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371
     (1988) ("Statutory construction . . . is a holistic endeavor.  A provision that may seem
22   ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . or
     because only one of the permissible meanings produces a substantive effect that is
23   compatible with the rest of the law.").  The Court should also construe this sentence to
     contain an implicit "reasonable time" limitation on the duration of time a person may be
24   detained pending an investigation into his or her immigration status.  *See* A.R.S. § 11-
     1051(L); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (construing a statute that
25   authorized detention of aliens without any temporal limitation to contain an implicit
     "reasonable time" limitation so as to avoid "serious constitutional concerns").

26   [5] A lawful stop or brief detention requires "specific, articulable facts which, together with
     objective and reasonable inferences, form a basis for suspecting that [a] particular person
27   is engaged in criminal activity." *United States v. Hernandez-Alvarado*, 891 F.2d 1414,
     1416 (9th Cir. 1989).  A prolonged detention or arrest requires probable cause.  *Muehler*
28   *v. Mena*, 544 U.S. 93, 101 (2005).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  of federal law, a person is guilty of willful failure to complete or carry an alien

2  registration document if the person is in violation of 8 [U.S.C. §§] 1304(e) or 1306(a)."

3  A.R.S. § 13-1509(A).  A.R.S. § 13-1509 further mirrors federal law by imposing the

4  same misdemeanor penalties as federal law for violations of 8 U.S.C. § 1304(e):  a

5  maximum fine of $100 and a maximum imprisonment of 30 days.  A.R.S. § 13-1509(A),

6  (H).  The only difference between this provision and the federal statutes is that A.R.S. §

7  13-1509 is more limited as it "does not apply to a person who maintains authorization

8  from the federal government to remain in the United States."  A.R.S. § 13-1509(F).

9               **3.     Section 4 (A.R.S. § 13-2319)**

10              Section 4 of SB 1070 modifies A.R.S. § 13-2319, a statute enacted in 2005 that

11  makes it "unlawful for a person to intentionally engage in the smuggling of human beings

12  for profit or commercial purpose."  The sole change SB 1070 made to this statute is to

13  codify law enforcement officers' existing authority to "stop any person who is operating

14  a motor vehicle if the officer has reasonable suspicion to believe the person is in violation

15  of any civil traffic law."  Both state and federal courts in Arizona have rejected

16  preemption challenges to A.R.S. § 13-2319.  *See State v. Barragan-Sierra*, 219 Ariz. 276,

17  287, 196 P.3d 879, 890 (App. 2008); *We Are Am./Somos Am. v. Maricopa Cnty. Bd. of*

18  *Supervisors*, 594 F. Supp. 2d 1104, 1113 (D. Ariz. 2009), *aff'd in relevant part by* No.

19  09-15281, U.S. App. LEXIS 14198 (9th Cir. July 12, 2010).

20              **4.     Section 5 (A.R.S. §§ 13-2828 and 13-2929)**

21              Section 5 of SB 1070 will add two provisions to the Arizona Criminal Code.  First,

22  A.R.S. § 13-2328 will make it a Class 1 misdemeanor for:

23      [A]n occupant of a motor vehicle that is stopped on a street, roadway
        or highway to attempt to hire or hire and pick up passengers for work
24      at a different location if the motor vehicle blocks or impedes the
        normal movement of traffic[;]
25
        [A] person to enter a motor vehicle that is stopped on a street, roadway
26      or highway in order to be hired by an occupant of the motor vehicle
        and to be transported to work at a different location if the motor
27      vehicle blocks or impedes the normal movement of traffic[; and]

28      [A] person who is unlawfully present in the United States and who is
        an unauthorized alien to knowingly apply for work, solicit work in a

11783904
- 4 -

1  public place or perform work as an employee or independent
2  contractor in this state.

3  Second, A.R.S. § 13-2929 will make it unlawful for a person who is in violation of

4  a criminal offense to transport, move, conceal, harbor, or shield unlawful aliens, or to

5  encourage an alien to come to this state if the person knows or recklessly disregards that

6  the person would be violating immigration laws to do so.

7  **5.      Section 6 (A.R.S. § 13-3883)**

8  Section 6 of SB 1070 adds to the authority Arizona peace officers have under

9  A.R.S. § 13-3883(A) to arrest a person without a warrant by authorizing such arrests

10  when "the officer has probable cause to believe . . . [t]he person to be arrested has

11  committed any public offense that makes the person removable from the United States."

12  Neither Section 6 nor any other federal, state, or local law authorizes Arizona's law

13  enforcement officers to determine whether a person is removable.  If, however, a law

14  enforcement officer receives confirmation from the federal government or its authorized

15  agent that a person is removable, this provision permits the officer to handle the initial

16  arrest and processing.[6]

17  **II.     LEGAL STANDARD**

18  "To survive a motion to dismiss, a complaint must contain sufficient factual

19  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

20  *v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted).  Claims are facially plausible

21  "when the plaintiff pleads factual content that allows the court to draw the reasonable

22  inference that the defendant is liable for the misconduct alleged."  *Id.*  (citation omitted).

23  **A.      Plaintiff Must Plead and Prove that the Challenged Provisions of SB**
24  **1070 Are Unconstitutional In All of Their Applications**

25  "A facial challenge to a legislative Act is . . . the most difficult challenge to mount

26  successfully, since the challenger must establish that no set of circumstances exists under

27  which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

28  ---
[6] A.R.S. § 11-1051(D) further reduces the federal government's burden by permitting the officer to transport the person to a federal facility.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

When considering a facial challenge, the Court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008); *see also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 589 (1987) (rejecting a facial challenge to the Coastal Commission's permit requirements under the Supremacy Clause even though application of the requirements *could* conflict with federal law because "the Coastal Commission's identification of a possible set of permit conditions not pre-empted by federal law [was] sufficient to rebuff [the plaintiff's] facial challenge").  Plaintiff also must overcome the presumption that Arizona's law enforcement officers will implement SB 1070 in a constitutional manner.  *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 446 (1935); *United States v. Booker*, 543 U.S. 220, 279-80 (2005) ("[In] facial invalidity cases . . . we ought to presume whenever possible that those charged with writing and implementing legislation will and can apply 'the statute consistently with the constitutional command.'") (quoting *Time, Inc. v. Hill,* 385 U.S. 374, 397 (1967)).

## B.      None of the Challenged Sections of SB 1070 Are Preempted

To establish its claim for implied preemption,[7] plaintiff must show that the challenged provisions of SB 1070: (1) purport to regulate immigration, an exclusively federal power; (2) legislate in a federally occupied field; or (3) conflict with federal law. *See De Canas v. Bica*, 424 U.S. 351, 355-63 (1976).  "Conflict preemption" is present only "when 'compliance with both State and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1169 (D. Ariz. 2005) (citations omitted).  Neither "[t]ension between federal and state law" nor a "hypothetical conflict" is sufficient to establish conflict preemption.  *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007) (citations omitted).   Plaintiff must also overcome the presumption, which the Supreme Court has held applies "[i]n all pre-

---

[7] "Federal preemption can be either express or implied."  *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009), *cert. granted*, 2010 U.S. LEXIS 5321 (June 28, 2010); *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008).  Plaintiff has not argued that any provision of federal law expressly preempts SB 1070.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

- 6 -

1  emption cases, . . . that the historic police powers of the States were not to be superseded

2  by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth*

3  *v. Levine*, 129 S. Ct. 1187, 1194-95 (2009) (citation omitted).  Plaintiff cannot, as a

4  matter of law, meet this burden with respect to any of its challenges to SB 1070.

5      **1.**  **A.R.S. § 11-1051 (Section 2) is not preempted**

6    Plaintiff alleges that A.R.S. § 11-1051(B) and (H) create a mandatory "alien

7  inspection scheme" that allegedly "stands as an obstacle to the full purposes and

8  objectives of Congress" in two respects.  Compl. ¶¶ 40-45.  First, plaintiff alleges that

9  A.R.S. § 11-1051(B) and (H) will impose burdens on "lawful immigrants and U.S.

10  citizens alike" because "reasonable suspicion" is not definitive proof and, therefore, will

11  result in investigations into the immigration status of lawfully present persons.  Compl. ¶

12  43.  It is well established, however, that an investigation predicated upon "reasonable

13  suspicion" of *any* violation of law – including immigration violations – is proper.  *See*,

14  *e.g.*, *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009); *Muehler v. Mena*, 544 U.S. 93, 100-

15  01 (2005); *United States v. Rodriguez-Arreola*, 270 F.3d 611, 617 (8th Cir. 2001).  This

16  is the same standard the federal government uses for investigating immigration

17  violations.  *See* 8 C.F.R. § 287.8(b)(2).  Plaintiff's allegation that such investigations

18  would impose impermissible burdens on lawfully present persons and U.S. citizens is, in

19  plaintiff's own words, "patently absurd" and would "result[] in wholly emasculated law

20  enforcement."  *See* Brief for Resp't at 14, *Samayoa-Martinez v. Gonzales*, No. 04-74220

21  (9th Cir. Feb. 10, 2006), *available at* 2006 WL 2362319.  By encouraging the

22  cooperative enforcement of federal immigration laws, A.R.S. § 11-1051(B) and (H) are

23  designed to further, not interfere with, congressional objectives.

24    Second, plaintiff alleges that A.R.S. § 11-1051(B) and (H) interfere with

25  congressional objectives because they allegedly "will necessarily result in a dramatic

26  increase in the number of [status] verification requests being issued to DHS . . .

27  necessitating a reallocation of DHS resources away from its policy priorities."  Compl. ¶

28  44.  The fatal flaw in this argument is that it disregards both plaintiff's obligations and

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

Arizona's obligations under federal law.  Congress determines DHS' objectives and the scope of DHS' authority.  *See* 6 U.S.C. § 111; 8 U.S.C. § 1103(a)(1).  As the Supreme Court held in rejecting the Department of Defense's ("DoD") preemption challenge to a North Dakota law:  "It is Congress—not the DoD—that has the power to pre-empt otherwise valid state laws . . ."  *North Dakota v. United States*, 495 U.S. 423, 442 (1990); *see also Wyeth*, 129 S. Ct. at 1207 (Breyer, J., concurring) (stating that preemptive effect is given only "to federal standards and policies that are set forth in, or necessarily follow from, the statutory text that was produced through the constitutionally required bicameral and presentment procedures").

Here, Congress has not only codified a federal policy of *encouraging* cooperation among federal, state, and local authorities in the enforcement of federal immigration laws, but it has *mandated* that DHS respond to inquiries from Arizona's law enforcement officers regarding individuals' immigration status.  *See* 8 U.S.C. §§ 1373 and 1644.  DHS simply has no choice but to allocate its resources in a manner that enables it to comply with this congressional mandate.  Further, the Supremacy Clause requires Arizona's law enforcement officers "to treat federal law on a parity with state law" and, therefore, prohibits them from repeatedly ignoring violations of federal immigration laws.  *See Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 942 (7th Cir. 2002).[8]

### 2.  A.R.S. § 13-1509 (Section 3) neither conflicts with federal law nor regulates in a federally occupied field

Plaintiff alleges that Section 3 (A.R.S. § 13-1509), which incorporates the federal penalties for violations of 8 U.S.C. §§ 1304(e) and 1306, is preempted on two grounds. First, plaintiff alleges that Section 3 "conflicts with and otherwise stands as an obstacle to the full purposes and objectives of Congress in creating a uniform and singular federal alien registration scheme."  Compl. ¶ 48.  This language is from *Hines v. Davidowitz*, in which the Supreme Court invalidated a Pennsylvania statute that imposed state-specific alien registration requirements *in addition to* the registration requirements Congress

---

[8] Further, plaintiff has not alleged the existence of any *congressional* policy or priority with which A.R.S. § 11-1051(B) and (H) purportedly conflict.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

imposed.  312 U.S. 52, 67, 74 (1941).  The *Hines* Court did not establish a *per se* bar on state laws touching upon alien registration.  Rather, the Court held that "where the federal government, in the exercise of its superior authority in [the field of immigration], has enacted a complete scheme of regulation and has therein provided a standard for the registration of aliens, states cannot, ***inconsistently with the purpose of Congress***, conflict or interfere with, curtail or complement, the federal law, or enforce additional or auxiliary regulations."  312 U.S. at 66-67 (emphasis added).  The Court held that Congress' purpose in enacting "a standard for alien registration" was "to protect the personal liberties of ***law-abiding aliens*** through one uniform national registration system" and that the Pennsylvania statute interfered with that purpose by imposing *additional* burdens on law-abiding aliens that would likely result in "inquisitorial practices and police surveillance" unrelated to any congressional objectives.  *Id.* at 74 (emphasis added).

Section 3 of SB 1070 does not implicate any of the concerns that led the *Hines* Court to invalidate Pennsylvania's alien registration statute.  Section 3 does not apply to law-abiding aliens or any alien that has authorization from the federal government to remain in the country.  *See* A.R.S. § 13-1509(F); *see also De Canas*, 424 U.S. at 363 (noting that the statute preempted in *Hines* "imposed burdens on aliens lawfully within the country that created conflicts with various federal laws").  Nor is Section 3 inconsistent with Congress' objectives in any respect.  Section 3 *reinforces* Congress' objectives by permitting Arizona to impose penalties that are no more than the penalties federal law imposes for violations of the federal registration requirements.  "Where state law 'mandates compliance with the federal immigration laws and regulations, it cannot be said [that state law] stands as an obstacle to accomplishment and execution of congressional objectives embodied in the INA.'"  *In re Jose C.*, 198 P.3d 1087, 1099-1100 (Cal. 2009), *cert. denied*, 129 S. Ct. 2804 (2009) (citations omitted).  Not only has Congress *invited* states to reinforce federal alien classifications, but Congress has, in many instances, required states to do so.  *See, e.g.*, 8 U.S.C. §§ 1621 through 1625 (prohibiting certain aliens from receiving state and local benefits and authorizing states to

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

1   limit certain aliens' eligibility for benefits); 8 U.S.C. § 1324a(h)(2) (permitting states to

2   impose sanctions upon employers who employ unauthorized aliens through licensing and

3   similar laws); Real ID Act of 2005, Pub. L. 109-13, 119 Stat. 302 (May 11, 2005)

4   (requiring that states verify that a person is lawfully present in the United States before

5   issuing the person a driver's license).[9]

6        Second, plaintiff alleges that Section 3 is preempted because it allegedly purports

7   to regulate immigration.  Compl. ¶ 49.  "State laws which impose discriminatory burdens

8   upon the entrance or residence of aliens lawfully within the United States conflict with

9   [the] constitutionally derived federal power to regulate immigration, and have

10  accordingly been held invalid."  *De Canas*, 424 U.S. at 358 n.6 (citation omitted).

11  Section 3 imposes no burdens on persons *lawfully* present within the United States.  *See*

12  A.R.S. § 13-1509(F).  Section 3, therefore, is not an impermissible "regulation of

13  immigration."

**3.      A.R.S. § 13-2319 (Section 4) does not conflict with federal law**

15       Plaintiff alleges that federal law preempts Section 4 of SB 1070 because "[t]here

16  are several key differences between the federal and Arizona smuggling provisions that

17  demonstrate that Arizona's alien smuggling prohibition actually regulates conditions of

18  lawful presence."  Compl. ¶ 51.  First, plaintiff alleges that the Arizona statute conflicts

19  with federal law because it is broader than the federal statute (8 U.S.C. § 1324).  Compl.

20  ¶ 51.  However, "[a] mere difference between state and federal law is not conflict." *Ariz.*

21  *Contractors Ass'n v. Napolitano*, No. CV07-1355-PHX-NVW, 2007 U.S. Dist. LEXIS

22  96194, at *25 (D. Ariz. Dec. 21, 2007).  Conflict preemption exists *only* where

23  "'compliance with both State and federal law is impossible, or the state law stands as an

24  obstacle to the accomplishment and execution of the full purposes and objectives of

25  Congress.'"  *Id.* (citation omitted).  The fact that Arizona's statute is broader than federal

26  _____
    [9] Moreover, Congress has amended the INA at least a dozen times since 1952 and never
27  expressly preempted concurrent state regulation.  *See, e.g.*, *Wyeth*, 129 S. Ct. at 1200
    ("'The case for federal pre-emption is particularly weak where Congress has indicated its
28  awareness of the operation of state law in a field of interest, and has nonetheless decided
    to stand by both concepts and to tolerate whatever tension there [is] between them.'")
    (citation omitted).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

law neither impedes the federal government's ability to prosecute persons for smuggling under 8 U.S.C. § 1324 nor makes it impossible for a person to comply with both laws.

Second, plaintiff erroneously alleges that A.R.S. § 13-2319 criminalizes unlawful presence because it applies to the unlawfully present alien.  Compl. ¶ 51.  At least two courts have found that prosecuting self-smuggling is a proper exercise of the State's police power.  *See Barragan-Sierra*, 219 Ariz. at 287, 196 P.3d at 890 (holding that it "ha[d] no difficulty finding that Arizona's human smuggling law furthers, by a classic example of its police power, the legitimate state interest of attempting to curb the 'culture of lawlessness' that has arisen around this activity"); *We Are Am./Somos Am.*, 594 F. Supp. 2d at 1113 (finding that Maricopa County's smuggling policy "appears to fill the interstices of the INA . . . by allowing for the prosecution of undocumented immigrants conspiring to smuggle themselves").

Third, plaintiff alleges that A.R.S. § 13-2319 "essentially ban[s] an unlawfully present alien from using commercial transportation."  Compl. ¶ 51.  This allegation misconstrues the requirements for a conviction under A.R.S. § 13-2319.  The statute requires both: (1) intent to smuggle for a commercial purpose *and* (2) knowledge that the person is unlawfully present in the country.  *See Barragan-Sierra*, 219 Ariz. at 283, 196 P.3d at 886.[10]  Mere transportation providers, therefore, will rarely (if ever) be subject to prosecution under A.R.S. § 13-2319.[11]

### 4.    Federal law does not preempt the *employee* sanctions in A.R.S. § 13-2928 (Section 5)

Plaintiff next alleges that the Immigration Reform and Control Act of 1986 ("IRCA") preempts A.R.S. § 13-2928 because IRCA does not sanction employees who perform unauthorized work.  Compl. ¶ 54.  However, IRCA contains an empress

---

[10] The culpable mental states for criminal liability in Arizona are "intentionally, knowingly, recklessly or with criminal negligence."  A.R.S. § 13-105(10).  To establish "knowledge," the State must prove knowledge or intent.  *See* A.R.S. § 13-202(C).

[11] This also defeats plaintiff's allegation that Section 4 imposes "special, impermissible burdens for lawfully present aliens, who will be predictably impeded from using commercial transportation services."  Compl. ¶ 51.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

preemption provision in which Congress could have, but chose not to, expressly preempt state and local laws that impose sanctions on employees. *See* 8 U.S.C. § 1324a(h)(2); *Wyeth*, 129 S. Ct. at 1196 ("[W]hen Congress enacted an express pre-emption provision for medical devices in 1976 . . . it declined to enact such a provision for prescription drugs."). Preemption cannot be lightly inferred in this instance because "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." *De Canas*, 424 U.S. at 356; *Ariz. Contractors Ass'n Inc. v. Candelaria*, 534 F. Supp. 2d 1036, 1049 (D. Ariz. 2008). The employee sanctions in Section 5 properly "focus[] directly upon . . . local problems and [are] tailored to combat effectively the perceived evils." 424 U.S. at 357. Thus, A.R.S. § 13-2928 is well within Arizona's police powers and is not preempted by federal law.

**5.    A.R.S. § 13-2929 (Section 5) does not regulate immigration**

Plaintiff alleges that A.R.S. § 13-2929 (from Section 5) "is an attempt to regulate unlawful entry into the United States." Compl. ¶ 56. Nothing in A.R.S. § 13-2929 purports to regulate who should or should not be admitted to the United States or the conditions upon which *a legal entrant* may remain.[12] Rather, A.R.S. § 13-2929 will make it unlawful for a person ***who is in violation of a criminal offense*** to transport, move, conceal, harbor, or shield unlawful aliens, or to encourage an alien to come to this state if the person knows or recklessly disregards that the person would be violating immigration laws to do so.[13] The fact that this statute applies *only* to persons who engage in such conduct while committing some other criminal offense demonstrates that it is designed to deter *criminals* from using illegal aliens to assist in their criminal conduct or

---

[12] A statute is a "regulation of immigration" if it defines "who should or should not be admitted into the country, and the conditions under which *a legal entrant* may remain." *De Canas*, 424 U.S. at 354-55 (emphasis added). The Supreme Court has expressly held that "the States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal." *Plyler v. Doe*, 457 U.S. 202, 225 (1982).

[13] Because A.R.S. § 13-2929 requires a predicate criminal offense, it would not, as plaintiff alleges, impose criminal liability on "religious organizations [that] 'encourage, invite, call, allow, or enable' an alien to volunteer as a minister or missionary" unless the religious organization *also* commits another crime while doing so. *See* Compl. ¶ 55.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    enterprise (*e.g.*, persons who induce aliens to enter or remain in the State unlawfully for

2    the purpose of assisting with their criminal enterprise).  The statute does not, as plaintiff

3    alleges, criminalize mere unlawful presence in Arizona.

4          **6.     Plaintiff's allegation that Section 6 is preempted is based entirely
                     on improper hypothetical scenarios**
5

6          Plaintiff has not alleged that A.R.S. § 13-3883(A)(5) (Section 6), which authorizes

7    warrantless arrests of aliens who are removable, is preempted in *all* of its applications.

8    Rather, plaintiff alleges that because A.R.S. § 13-3883(A)(5) "does not require

9    coordination with DHS to verify removability" it will result in the arrest of aliens that the

10   federal government has determined should not be removed.  Compl. ¶¶ 57-59.  Such

11   hypothetical conflicts are insufficient to sustain a facial challenge.  *See Salerno*, 481 U.S.

12   at 745; *Wash. State Grange*, 552 U.S. at 450.  Further, nothing in SB 1070 or any other

13   provision of state or federal law authorizes Arizona's law enforcement officers to make

14   determinations regarding a person's removability.  Under A.R.S. § 11-1051, Arizona's

15   law enforcement officers will regularly communicate with federal authorities and their

16   authorized agents regarding the immigration status of aliens.  If federal authorities or a

17   Section 287(g) officer confirms that the alien has been found removable[14] or has

18   committed an offense that would make the alien removable,[15] A.R.S. § 13-3883(A)(5)

19   merely provides Arizona's law enforcement officers with the ability to arrest and, in

20   connection with A.R.S. § 11-1051(D), transport the person directly to a federal agency

21   for processing.  Because there are clearly circumstances in which A.R.S. § 13-3883(A)(5)

22   can be applied consistent with federal law, the statute is not invalid on its face.

---

23   [14] The filings plaintiff submitted to this Court in connection with its Complaint confirm
     that DHS' National Crime Information Center database identifies: (1) aliens who have
24   been found removable but have absconded and (2) aliens who have previously been
     deported for committing aggravated felons.  *See* Palmatier Decl. ¶ 3, attached as Exhibit
25   3 to plaintiff's Motion for a Preliminary Injunction.  Federal law permits state and local
     law enforcement officers to arrest aliens who have previously been deported after a
26   felony conviction, but only if state law provides such authority.  *See* 8 U.S.C. § 1252c.

27   [15] Federal law provides a presumption of deportability for aggravated felonies.  *See* 8
     U.S.C. § 1228(c) ("An alien convicted of an aggravated felony shall be conclusively
28   presumed to be deportable from the United States"); 8 U.S.C. § 1101(a)(43) defines
     "aggravated felony."

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

**C.** **Plaintiff's Argument that SB 1070 Interferes with Foreign Policy Objectives Is Merely An Attempt to Side-Step the *De Canas* Test**

In addition to its specific challenges to Sections 2 through 6 of SB 1070, plaintiff alleges that Sections 1 through 6 "conflict with federal law and foreign policy" and are preempted by U.S. foreign policy. Compl. ¶¶ 38, 62, 65. Although a potential adverse impact to foreign relations is one of the *policies* underlying federal preemption, *see Hines*, 312 U.S. at 63-64, neither a foreign government's disapproval of a state law nor personal opinions regarding the law's impact on foreign relations can invalidate an otherwise constitutional law. In *De Canas*, the Supreme Court expressly set forth the test for federal preemption of the type of regulations at issue here – regulations designed to address harm specific to Arizona and that touches upon aliens that the federal government has determined are ***not lawfully present*** in the country. *See* 424 U.S. at 355-63. *De Canas* controls the preemption inquiry and, for the reasons set forth above, plaintiff has not demonstrated preemption under the *De Canas* test.

**D.** **SB 1070 Correctly Adopts Federal Law as the Policy of Arizona**

Plaintiff also seeks to invalidate SB 1070 on the ground that it allegedly attempts to set immigration policy at the state level. *See* Compl. ¶ 62. However, Arizona's policies of cooperative enforcement of the federal immigration laws and "attrition through enforcement" incorporate the enforcement policies that Congress has established. *See, e.g.*, 8 U.S.C. §§ 1373 and 1644. Plaintiff has not identified (and cannot identify) any *congressional* policy that SB 1070 contravenes. *See, e.g., City of New York v. FCC*, 486 U.S. 57, 63 (1988) ("The phrase 'Laws of the United States' encompasses . . . federal statutes . . . and federal regulations that are properly adopted in accordance with statutory authorization."); *see also Wyeth*, 129 S. Ct. at 1207 (Breyer, J., concurring).

Plaintiff also fails to allege how the policies underlying SB 1070 will interfere with any DHS or DOJ enforcement priorities. Arizona cannot require the federal government to take any action with respect to any illegal alien within Arizona's borders – nor does SB 1070 attempt to do so. SB 1070 merely requires, in limited circumstances,

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

1   that Arizona's law enforcement officers exercise their existing authority to communicate

2   with the federal government regarding possible immigration violations.  This requirement

3   cannot divert federal resources away from federal priorities because *Congress* determines

4   federal priorities and Congress has not only invited such inquiries but has *required* ICE to

5   respond to them.  *See* 8 U.S.C. §§ 1373 and 1644.[16]

6   **E.      Section 5 of SB 1070 Does Not Violate the Commerce Clause**

7            The only provision of SB 1070 that plaintiff claims violates the Commerce Clause

8   is A.R.S. § 13-2929 (from Section 5).  *See* Compl ¶¶ 66-68.[17]  A.R.S. § 13-2929 does not

9   address whether aliens can or cannot come to the State, nor does it regulate their entry in

10  any way.  A.R.S. § 13-2929 simply provides that individuals, ***who are in violation of a***

11  ***criminal offense***, cannot also transport, move, conceal, harbor or shield *illegal* aliens

12  within the state *in furtherance of their unlawful presence*, nor can they encourage an

13  *illegal* alien to *illegally* enter or reside in the State.

14  **1.      Plaintiff fails to allege a Commerce Clause violation**

15           "To make out a claim that [a] regulation impermissibly burdens the commerce

16  clause, [plaintiff] must sufficiently plead that the local law discriminates against interstate

17  commerce either on its face, or in its effect."  *Hertz Corp. v. City of New York*, 1 F.3d

18  121, 131 (2d Cir. 1993) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)); *City of*

19  *New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 362 (S.D.N.Y. 2000)

20  (concluding that plaintiff failed to state a claim that a law violates the commerce clause

21  as plaintiff did not "allege discrimination against out-of-state interests.").

22           Plaintiff does not explain how A.R.S. § 13-2929 supposedly discriminates against

---

[16] Because SB 1070 does not (and could not) grant Arizona's law enforcement officers
any authority to determine who should or should not remain in the country, SB 1070 does
not interfere with the federal government's interest in providing humanitarian relief.  In
fact, A.R.S. § 11-1051(L) expressly requires that the section "be implemented in a
manner consistent with federal laws regulating immigration."

[17] Plaintiff does not allege that the Act violates *intra*state movement.  Since A.R.S. § 13-
2929(A)(1) and (2) relate exclusively to movement within the state, plaintiff is seemingly
challenging only A.R.S. § 13-2929(A)(3), which relates to "encourag[ing] or induc[ing]
an alien to come to or reside in this state" in violation of law.  This subsection does not
distinguish between in-state and out-of-state illegal aliens, as a person could conceivably
encourage or induce an illegal alien, who is in-state *or* out-of-state, to reside in Arizona.

**Snell & Wilmer**
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  interstate commerce.  Plaintiff alleges only that A.R.S. § 13-2929 "restricts the interstate

2  movement of aliens in a manner that is prohibited by [the Commerce Clause]."  Compl. ¶

3  67.  Plaintiff's formulaic recitation that A.R.S. § 13-2929 "violates the Commerce

4  Clause" is insufficient to support a Commerce Clause claim.  Compl. ¶¶ 66-68.[18]

5          **2.**        **A.R.S. § 13-2929 does not violate the Commerce Clause**

6        A.R.S. § 13-2929 creates no barriers against interstate commerce, nor does it

7  prohibit the flow of interstate goods, place added costs upon them, or distinguish between

8  in-state and out-of-state companies in the retail market.  *See Exxon v. Governor of Md.*,

9  437 U.S. 117, 126 (1978) (discussing that "[t]he absence of any of these factors fully

10  distinguishes this case from those in which a State has been found to have discriminated

11  against interstate commerce"); *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S.

12  69, 87 (1987) ("The principal objects of dormant Commerce Clause scrutiny are statutes

13  that discriminate against interstate commerce."); *On the Green Apartments, L.L.C. v. City

14  of Tacoma*, 241 F.3d 1235, 1241 (9th Cir. 2001) (citation omitted) ("It is well settled that

15  actions are within the domain of the Commerce Clause if they burden interstate

16  commerce or impede its free flow.").[19]

17         "Legislation, in a great variety of ways, may affect commerce and persons

18  engaged in it without constituting a regulation of it, within the meaning of the

19  Constitution."  *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 444 (1960)

20  (citation omitted); *see also Ark. Elec. Co-op. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S.

21  375, 395 (1983) (citation omitted) (explaining the Court's unwillingness to permit a

22  hypothetical possibility that a statute may burden interstate commerce to sustain a facial

---

[18] Plaintiff also generally alleges that, "because the purpose of this law is to deter and prevent the movement of certain aliens into Arizona, the law restricts interstate commerce."  Compl. ¶ 56.  However, A.R.S. § 13-2929 applies only to the actions of individuals who are already in violation of a criminal offense *and* are assisting illegal aliens either in furtherance of their illegal presence or encouraging or inducing such illegal presence.  *See* SB 1070 § 1.

[19] Plaintiff has failed to allege any benefit to in-state interests at the expense of out-of-state interests or that A.R.S. § 13-2929 "imped[es] free private trade in the national marketplace."  *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) (citation omitted).

11783904

1    challenge).  The Commerce Clause does not "cut the States off from legislating on all

2    subjects relating to the health, life, and safety of their citizens, though the legislation

3    might indirectly affect the commerce of the country."  *Huron*, 362 U.S. at 443-44.[20]

4        "The central rationale for the rule against discrimination is to prohibit state or

5    municipal laws whose object is local economic protectionism, laws that would excite

6    those jealousies and retaliatory measures the Constitution was designed to prevent."  *On*

7    *the Green*, 241 F.3d at 1238 (citation omitted) *see also Nat'l Audobon Society, Inc. v.*

8    *Davis*, 307 F.3d 835, 857-58 (9th Cir. 2002) (holding that plaintiff's "highly speculative"

9    claim did not "show that the state law or regulation in question penalizes interstate

10   commerce, and does so without sufficient economic justification.").  Plaintiff has not

11   alleged that A.R.S. § 13-2929 discriminates against out-of-state interests and treats them

12   less favorably than in-state interests, nor has plaintiff alleged that A.R.S. § 13-2929

13   impermissibly burdens interstate commerce.[21]

14   **IX.    CONCLUSION**

15       For the foregoing reasons, Governor Brewer and the State of Arizona respectfully

16   request that the Court dismiss plaintiff's Complaint for failure to state a claim upon

17   which relief may be granted.

---

[20] "As long as a state does not needlessly obstruct interstate trade or attempt to 'place itself in a position of economic isolation,' it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources." *Maine v. Taylor*, 477 U.S. 131, 151 (1986) (internal citation omitted).

[21] Moreover, plaintiff's allegations are insufficient to support a claim for violation of the Commerce Clause, as federal law prohibits illegal aliens from entering or residing in the country, and effectively prohibits their transportation into Arizona as well.  *See, e.g., Seke v. Com.*, 482 S.E.2d 88, 92 (Va. App. 1997) (holding that a Virginia statute prohibiting the transportation of certain controlled substances does not violate the Commerce Clause since "laws prohibiting the possession of controlled substances effectively prohibit their transportation wholly within the Commonwealth as well.").

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

11783904

DATED this 26th day of July, 2010.

SNELL & WILMER L.L.P.


By: s/ John J. Bouma
    John J. Bouma
    Robert A. Henry
    Joseph G. Adams
    One Arizona Center
    400 E. Van Buren
    Phoenix, AZ  85004-2202

    and

By  s/Joseph A. Kanefield *with permission*
    Joseph A. Kanefield
    Office of Governor Janice K. Brewer
    1700 W. Washington, 9th Floor
    Phoenix, AZ  85007

    *Attorneys for Janice K. Brewer, Governor of the*
    *State of Arizona, and the State of Arizona*

11783904

- 18 -

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on July 26, 2010 I electronically transmitted the foregoing

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5          Tony West
           Dennis K. Burke
6          Arthur R. Goldberg
           Varu Chilakamarri
7          Joshua Wilkenfeld
           U.S. Department of Justice, Civil Division
8          20 Massachusetts Avenue, N.W.
           Washington, D.C. 20530
9

10

11                                s/John J. Bouma

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11783904

- 19 -