IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV 10-1413-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| The State of Arizona; Janice K. Brewer, Governor of the State of Arizona, in her Official Capacity, | |
| Defendants. | |

At issue is Defendants the State of Arizona and Janice K. Brewer's Motion to Dismiss ("Defs.' Mot.") (Doc. 81).

**I.    BACKGROUND**

   **A.    Procedural Background**

The facts of this case were summarized in this Court's Order of July 28, 2010 ("PI Order"), which is fully incorporated herein. The pertinent details will be summarized here. Plaintiff the United States challenges the constitutionality of Arizona's Senate Bill 1070, as modified by House Bill 2162 (collectively, "S.B. 1070"), which had an effective date of July 29, 2010. (*See* Compl. ¶ 1.) Plaintiff moved for a preliminary injunction on July 7, 2010. (*See* Doc. 27, Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot.").) Oral argument on Plaintiff's Motion for a Preliminary Injunction was heard on July 22, 2010. (*See* Doc. 84.) Defendants' Motion to

Dismiss was filed on July 26, 2010. Two days later, on July 28, 2010, the Court ruled on Plaintiff's Motion and preliminarily enjoined portions of S.B. 1070. (*See* Doc. 87, PI Order at 4.) Defendants appealed the Court's ruling on Plaintiff's Motion on July 29, 2010. (*See* Doc. 89, Notice of Interlocutory Appeal.) The Court now turns to Defendants' Motion.

**B.     Summary of S.B. 1070**

Plaintiff's Complaint seeks "[a] declaratory judgment stating that Sections 1-6 of S.B. 1070 are invalid, null, and void," alleging that those provisions violate the Supremacy Clause and are preempted by federal immigration law. (*See* Compl. ¶¶ 61-65.) Plaintiff also asserts that Section 5 of S.B. 1070 violates the Commerce Clause. (*Id.* ¶¶ 66-68.) The Complaint does not challenge Sections 7-13 of S.B. 1070. Sections 1-6 of S.B. 1070 are summarized below.

**1.     Section 1**

Section 1 of S.B. 1070 states that "the intent of [S.B. 1070] is to make attrition through enforcement the public policy of all state and local government agencies in Arizona" and that "[t]he provisions of this act are intended to work together to discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States." Section 1 also states that "there is a compelling interest in the cooperative enforcement of federal immigration laws throughout all of Arizona."

**2.     Section 2**

Section 2 of S.B. 1070 adds A.R.S. § 11-1051. Section 2 contains twelve separate subsections. Subsection 2(A) prohibits Arizona officials, agencies and political subdivisions from limiting or restricting the enforcement of federal immigration laws. A.R.S. § 11-1051(A). Subsection 2(B) requires officers to make a reasonable attempt, when practicable, to determine an individual's immigration status during any lawful stop, detention, or arrest where reasonable suspicion exists that the person is unlawfully present in the United States. *Id.* § 11-1051(B). Subsection 2(B) also requires that all persons who are arrested have their immigration status verified prior to release. *Id.* Subsections 2(B) and 2(E) provide the process for verifying immigration status and list documents that create a presumption of lawful

presence. *Id.* § 11-1051(B), (E). Mandatory stops for the purpose of immigration status verification are not required or authorized by Subsection 2(B). Subsection 2(C) requires notification of ICE or Customs and Border Protection whenever an unlawfully present alien is discharged or assessed a monetary obligation. *Id.* § 11-1051(C). Subsections 2(D) and (F) permit law enforcement to securely transport unlawfully present aliens and send, receive, and exchange information related to immigration status. *Id.* § 11-1051(D), (F).

In addition, Subsection 2(H) permits legal residents of Arizona to bring actions in state court "to challenge any official or agency of [Arizona] that adopts or implements a policy or practice that limits or restricts the enforcement of federal immigration laws to less than the full extent permitted by federal law." *Id.* § 11-1051(H). Subsections 2(I) and (J) address the civil penalties arising from such civil suits, and Subsection 2(K) provides that law enforcement officers are indemnified against reasonable costs and expenses incurred by the officer in connection with any suit initiated under this Section unless the officer is found to have acted in bad faith. *Id.* § 11-1051(I)-(K).

### 3. Section 3

Section 3 of S.B. 1070 adds A.R.S. § 13-1509, which provides that "a person is guilty of willful failure to complete or carry an alien registration document if the person is in violation of [8 U.S.C. §§] 1304(e) or 1306(a)," federal statutes that require aliens to carry documentation of registration and penalize the willful failure to register. A.R.S. § 13-1509(A). Violation of Section 3 is a class 1 misdemeanor and results in a maximum fine of $100 and a maximum of 20 days in jail for a first violation and up to 30 days in jail for any subsequent violation. *Id.* § 13-1509(H). Section 3 limits a violator's eligibility for a suspended sentence, probation, pardon, and commutation of a sentence and requires violators to pay jail costs. *Id.* § 13-1509(D), (E). In the enforcement of Section 3, immigration status may be determined by a law enforcement officer authorized by the federal government or pursuant to 8 U.S.C. § 1373(c). *Id.* § 13-1509(B). Pursuant to Subsection 3(C), law enforcement officers are not permitted to consider race, color, or national origin in the enforcement of Section 3. *Id.* § 13-1509(C). Finally, Section 3 does not apply to "a person

1 who maintains authorization from the federal government to remain in the United States."
2 *Id.* § 13-1509(F).

### 4. Section 4

In Section 4 of S.B. 1070, the Arizona Legislature revised A.R.S. § 13-2319 by adding a provision that permits officers enforcing Arizona's human smuggling statute to stop any person who is operating a motor vehicle if the officer has reasonable suspicion to believe that the person is in violation of any civil traffic law. *Id.* § 13-2319(E). Section 4 does not make any other changes or additions to Arizona's human smuggling statute, A.R.S. § 13-2319.

### 5. Section 5

Section 5 of S.B. 1070 adds two provisions to the Arizona Criminal Code, A.R.S. §§ 13-2928 and 13-2929. A.R.S. § 13-2928(A) provides that it is unlawful for an occupant of a motor vehicle that is stopped on a street, roadway, or highway and is impeding traffic to attempt to hire a person for work at another location. *Id.* § 13-2928(A). Similarly, A.R.S. § 13-2928(B) provides that it is unlawful for a person to enter a motor vehicle in order to be hired if the vehicle is stopped on a street, roadway, or highway and is impeding traffic. *Id.* § 13-2928(B). Finally, A.R.S. § 13-2928(C) provides that it is unlawful "for a person who is unlawfully present in the United States and who is an unauthorized alien to knowingly apply for work, solicit work in a public place or perform work as an employee or independent contractor in this state." *Id.* § 13-2928(C). Violation of A.R.S. § 13-2928 is a class 1 misdemeanor. *Id.* § 13-2928(F).

Section 5 of S.B. 1070 also creates A.R.S. § 13-2929, which provides that it is unlawful for a person who is in violation of a criminal offense to: (1) transport or move or attempt to transport or move an alien in Arizona in furtherance of the alien's unlawful presence in the United States; (2) conceal, harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in Arizona; and (3) encourage or induce an alien to come to or live in Arizona. *Id.* § 13-2929(A)(1)-(3). In order to violate A.R.S. § 13-2929(A), a person must also know or recklessly disregard the fact that the alien is unlawfully present in

the United States. *Id.* Violation of A.R.S. § 13-2929 is a class 1 misdemeanor. *Id.* § 13-2929(F).

### 6. Section 6

Section 6 of S.B. 1070 amends A.R.S. § 13-3883 to permit an officer to arrest a person without a warrant if the officer has probable cause to believe that "the person to be arrested has committed any public offense that makes the person removable from the United States." *Id.* § 13-3883(A)(5).

### C. Summary of PI Order Findings

After considering the merits of Plaintiff's Motion, the Court found that the United States is likely to succeed on the merits in showing that the following Sections of S.B. 1070 are preempted by federal law:

<u>Portion of Section 2 of S.B. 1070</u>
A.R.S. § 11-1051(B): requiring that an officer make a reasonable attempt to determine the immigration status of a person stopped, detained or arrested if there is a reasonable suspicion that the person is unlawfully present in the United States, and requiring verification of the immigration status of any person arrested prior to releasing that person

<u>Section 3 of S.B. 1070</u>
A.R.S. § 13-1509: creating a crime for the failure to apply for or carry alien registration papers

<u>Portion of Section 5 of S.B. 1070</u>
A.R.S. § 13-2928(C): creating a crime for an unauthorized alien to solicit, apply for, or perform work

<u>Section 6 of S.B. 1070</u>
A.R.S. § 13-3883(A)(5): authorizing the warrantless arrest of a person where there is probable cause to believe the person has committed a public offense that makes the person removable from the United States

The Court further found that the United States was likely to suffer irreparable harm if the Court did not preliminarily enjoin enforcement of those Sections of S.B. 1070 and that the balance of equities tipped in the United States' favor considering the public interest. The Court therefore preliminarily enjoined the enforcement of the portion of Section 2 creating A.R.S. § 11-1051(B), Section 3 creating A.R.S. § 13-1509, the portion of Section 5 creating A.R.S. § 13-2928(C), and Section 6 creating A.R.S. § 13-3883(A)(5). (*See* PI Order at 4, 36.)

Plaintiff did not seek to preliminarily enjoin the following portions of S.B. 1070:

Section 1 of S.B. 1070
no A.R.S. citation: providing the intent of the legislation

Portions of Section 2 of S.B. 1070
A.R.S. § 11-1051(A): prohibiting Arizona officials, agencies, and political subdivisions from limiting enforcement of federal immigration laws

A.R.S. § 11-1051(C)-(F): requiring that state officials work with federal officials with regard to unlawfully present aliens

A.R.S. § 11-1051(G)-(L): allowing legal residents to sue any state official, agency, or political subdivision for adopting a policy of restricting enforcement of federal immigration laws to less than the full extent permitted by federal law and setting out policies surrounding such lawsuits

Section 4 of S.B. 1070[1]
A.R.S. § 13-2319: amending the crime of human smuggling

Portion of Section 5 of S.B. 1070
A.R.S. § 13-2928(A)-(B): creating a crime for stopping a motor vehicle to pick up day laborers and for day laborers to get in a motor vehicle if it impedes the normal movement of traffic

(*See id.*)

Finally, although the United States sought a preliminary injunction running to the following portions of S.B. 1070, the Court concluded that it was not likely to succeed on the merits of its challenge and denied injunctive relief:

Portion of Section 5 of S.B. 1070
A.R.S. § 13-2929: creating a separate crime for a person in violation of a criminal offense to transport or harbor an unlawfully present alien or encourage or induce an unlawfully present alien to come to or live in Arizona

---

[1] Although the United States' Complaint challenges Section 4 of S.B. 1070 and the rest of A.R.S. § 13-2319, counsel for the United States stated at oral argument on Plaintiff's Motion that the federal government did not seek to preliminarily enjoin A.R.S. § 13-2319. (Hr'g Tr. 5:10-20, July 22, 2010 ("Hr'g Tr.").)

- 6 -

Section 10 of S.B. 1070
A.R.S. § 28-3511:  amending the provisions for the removal or impoundment of a vehicle to permit impoundment of vehicles used in the transporting or harboring of unlawfully present aliens[2]

(*Id.*)

## II.  LEGAL STANDARDS AND ANALYSIS

### A.  Motion to Dismiss Standard

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a)(2). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). This presumption applies only to facts and "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct.

---

[2] The United States asserted in its Motion that "Section 10 is preempted insofar as it is based on state law violations identified in Sections 4 and 5." (Pl.'s Mot. at 12 n.8.) However, the Complaint only seeks relief related to Sections 1 through 6. (Compl. ¶¶ 61-65.)

- 7 -

1937, 1949 (2009)."[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1952). A complaint must contain sufficient factual allegations, which, if accepted as true, state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (2009).

### B.     Preemption

The United States' Complaint principally alleges that provisions of S.B. 1070 are preempted by federal immigration law. (*See, e.g.*, Compl. ¶¶ 47, 51, 54, 61-65.) The Supremacy Clause of the United States Constitution makes federal law "the supreme law of the land." U.S. Const. art. VI, cl. 2. The Supreme Court has consistently ruled that the federal government has broad and exclusive authority to regulate immigration, supported by both enumerated and implied constitutional powers.[3] While holding that the "[p]ower to regulate immigration is unquestionably exclusively a federal power," the Supreme Court concluded that not every state enactment "which in any way deals with aliens is a regulation of immigration and thus per se preempted by this constitutional power, whether latent or exercised." *De Canas v. Bica*, 424 U.S. 351, 354-355 (1976).

Federal preemption can be either express or implied. *Chicanos Por La Causa v. Napolitano*, 544 F.3d 976, 982 (9th Cir. 2008), *cert. granted*, 78 U.S.L.W. 3065, 78 U.S.L.W. 3754, 78 U.S.L.W. 3762 (U.S. June 28, 2010) (No. 09-115). There are two types

---

[3] A variety of enumerated powers implicate the federal government's long-recognized immigration power, including the Commerce Clause, the Naturalization Clause, and the Migration and Importation Clause. *See* U.S. Const. art. I, § 8, cl. 3-4; art. I, § 9, cl. 1; *see also Fong Yue Ting v. United States*, 149 U.S. 698, 706 (1893); *Chae Chan Ping v. United States*, 130 U.S. 581, 603-04 (1889).

- 8 -

of implied preemption: field preemption and conflict preemption. *Id.* Field preemption occurs "where 'the depth and breadth of a congressional scheme . . . occupies the legislative field.'" *Id.* (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). Conflict preemption describes a situation in which "compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotations and citations omitted). An actual, as opposed to hypothetical or potential, conflict must exist for conflict preemption to apply. *Id.*

**C.   Facial Challenge**

The United States makes a facial challenge to S.B. 1070 in this case. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court later observed, in considering a facial challenge, "[S]ome Members of the Court have criticized the *Salerno* formulation, [but] all agree that a facial challenge must fail where a statute has a 'plainly legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 739-40 & n.7 (1997) (Stevens, J., concurring in judgments)). In deciding a facial challenge, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Id.* at 449-50 (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)).

**D.   Effect of PI Order**

In the PI Order, the Court found that Plaintiff was likely to succeed on certain portions of its challenge to S.B. 1070. In particular, the Court found that Plaintiff demonstrated a likelihood of success with regard to preemption of the portion of Section 2 creating A.R.S. § 11-1051(B), Section 3 creating A.R.S. § 13-1509, the portion of Section 5 creating A.R.S. § 13-2928(C), and Section 6 creating A.R.S. § 13-3883(A)(5). (*See* PI Order at 4, 36.) The standard for determining likelihood of success is more stringent than the standard for

1 determining whether a plaintiff has stated a claim. *Compare Winter v. Natural Res. Def.*
2 *Council, Inc.*, 129 S. Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must
3 establish that he is likely to succeed on the merits. . . ." (citations omitted)), *and Earth Island*
4 *Inst. v. Carlton*, No. 09-16914, 2010 WL 4399138, at *3 (9th Cir. Nov. 8, 2010) (observing
5 that plaintiffs seeking a preliminary injunction face "a difficult task in proving that they are
6 entitled to this 'extraordinary remedy'" and concluding that it was not improper for a district
7 court, in dictum, to "[c]haracteriz[e] this as a 'heavy burden'" (citations omitted)), *with Moss*,
8 572 F.3d at 969 (explaining that, for a complaint to survive a motion to dismiss under Rule
9 12(b)(6), its factual content must lead to an inference of liability that is more than merely
10 possible and holding that "the non-conclusory factual content, and reasonable inferences
11 from that content[,] must be *plausibly* suggestive of a claim entitling the plaintiff to relief"
12 (emphasis added) (quotation and citation omitted)).

13 "[T]he findings of fact and conclusions of law made by a court granting a preliminary
14 injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390,
15 395 (1981). But a motion to dismiss brought pursuant to Rule 12(b)(6) is designed to test the
16 sufficiency of the notice given by the complaint to the defendants and to determine whether
17 the complaint can proceed to later stages of litigation, *not* to generate findings of fact or
18 conclusions of law. *See, e.g.*, Fed. R. Civ. P. 8(a)(2). Thus, the standard for likelihood of
19 success on the merits for preliminary injunction purposes is necessarily more stringent than
20 the standard for failure to state a claim for Rule 12(b)(6) purposes.

21 On account of the more exacting standard required to demonstrate a likelihood of
22 success on the merits, the Court will not reexamine in this Order the claims with regard to
23 which the Court previously found that Plaintiff had demonstrated a likelihood of success.
24 (*See* PI Order at 4, 36.) *A fortiori*, if the United States passed muster under the likelihood of
25 success standard, it has also stated a claim sufficient to survive a motion to dismiss under
26 Rule 12(b)(6). Therefore, Defendants' Motion is denied as to Plaintiff's preemption
27 challenge to the portion of Section 2 creating A.R.S. § 11-1051(B), Section 3 creating
28

A.R.S. § 13-1509, the portion of Section 5 creating A.R.S. § 13-2928(C), and Section 6 creating A.R.S. § 13-3883(A)(5).

### E.    Remaining Portions of S.B. 1070

#### 1.    Section 1

Defendant's Motion does not specifically reference Section 1 of S.B. 1070, as Plaintiff points out in its Response. (*See* Pl.'s Resp. to Defs.' Mot. ("Pl.'s Resp.") at 1 n.2.) Defendants state in their Reply that their Motion *does* challenge Section 1, in that it moves to dismiss Plaintiff's theory that S.B. 1070 operates as an integrated whole and as an impermissible regulation of immigration. (Defs.' Reply at 1 (citing Defs.' Mot. at 14-15).)

The Complaint seeks declaratory and injunctive relief related to Section 1, the purposes clause, which states:

> The legislature declares that the intent of this act is to make attrition through enforcement the public policy of all state and local government agencies in Arizona. The provisions of this act are intended to work together to discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States.

S.B. 1070 § 1; (*see* Compl. ¶¶ 62, 65.) However, other than somewhat oblique references to the ways in which the United States alleges that S.B. 1070 functions as a unitary statutory scheme that "in both its singularly stated purpose and necessary operation[] conflicts with" federal enforcement priorities, the Complaint does not specifically challenge Section 1. (*See* Compl. ¶¶ 36-38.) Section 12(A) of S.B. 1070 provides for the severability of S.B. 1070's provisions, stating that if any provision of the Act "is held invalid, the invalidity does not affect other provisions . . . that can be given effect without the invalid provision." As the Court concluded in the PI Order,

> While Section 1 of S.B. 1070 provides a statement of the Act's intent and purpose, it does not create a single and unified statutory scheme incapable of careful provision by provision analysis. The Court cannot enjoin a purpose; the Arizona Legislature is free to express its viewpoint and intention as it wishes, and Section 1 has no operative function.

(PI Order at 13.)

The Court must be mindful of S.B. 1070's severability clause and does not interpret S.B. 1070 the way the United States does, namely as an integrated statutory scheme that

- 11 -

1  cannot be parsed, provision by provision. Therefore, to the extent that the Complaint asserts
2  such a theory, it fails to state a plausible claim entitling Plaintiff to relief. Moreover, the
3  Complaint makes no specific allegations related to Section 1, other than including it in the
4  causes of action. (Compl. ¶¶ 61-65.) Because the Court does not accept Plaintiff's theory
5  regarding the integrated function of S.B. 1070 and because there are no specific allegations
6  in the Complaint related to the enactment's purposes clause, Defendants' Motion is granted
7  with respect to Section 1.

**2.      Portions of Section 2: A.R.S. § 11-1051(A), (C)-(L)**

9  Defendants move to dismiss Plaintiff's challenges to Section 2, which Defendants
10 point out are limited in the Complaint to Subsections 2(B) and (H). (Defs.' Mot. at 3, 7-8;
11 *see also* Compl. ¶¶ 33, 37, 40-45.) The Complaint makes no mention of Subsections 2(A),
12 (C) through (G), and (I) through (L), either by name or in reference to the content. (Compl.
13 ¶¶ 33, 37, 40-45.) However, as stated above, the Complaint seeks declaratory and injunctive
14 relief with respect to "Sections 1-6 of S.B. 1070." (*Id.* ¶¶ 61-65.) Subsection 2(A) prohibits
15 Arizona officials, agencies and political subdivisions from limiting or restricting the
16 enforcement of federal immigration laws to the fullest extent permissible under federal law.
17 A.R.S. § 11-1051(A). In its Response, the United States argues that "although Section 2(A)
18 would not be preempted if it merely prohibits localities from banning cooperation between
19 local law enforcement and the federal government, the law would be preempted to the extent
20 it mandates activities of the type required by Section 2(B)." (Pl.'s Resp. at 5 n.7.) The Court
21 has already concluded that the United States demonstrated a likelihood of success on its
22 theory that Subsection 2(B) is preempted. (PI Order at 13-21.) However, the United States
23 has not alleged facts raising its right to relief above the speculative level on a theory that
24 Subsection 2(A), which is not specifically referenced at any point in the Complaint, is
25 preempted on its own. The Complaint also does not specifically reference Subsections 2(C)
26 through (G) or (I) through (L). To the extent that the Complaint challenges Subsections 2(A),
27 (C), (D), (E), (F), (G), (I), (J), (K), and (L), the Court finds that it fails to state a claim that

plausibly entitles the United States to relief because the Complaint lacks any specific allegations regarding those Subsections.

The Complaint does specifically reference Subsections 2(B) and (H). As discussed, the Court will not address Section 2(B) in this Order as a result of its conclusions in the PI Order. Subsection 2(H), which was not enjoined in the PI Order, permits legal residents of Arizona to bring actions in state court "to challenge any official or agency of [Arizona] that adopts or implements a policy or practice that limits or restricts the enforcement of federal immigration laws to less than the full extent permitted by federal law." A.R.S. § 11-1051(H). The United States alleges that the mandatory nature of Subsection 2(B) combined with "the threat of private lawsuits" removes the discretion law enforcement officers used to have in determining whether to verify a person's immigration status during the course of a stop, detention, or arrest. (Compl. ¶ 41.) The Complaint does not allege that Subsection 2(H) is preempted *on its own*, merely that, in concert with the other enforcement provisions of S.B. 1070, it conflicts with federal priorities and impermissibly redirects federal resources. (*Id.* ¶¶ 41-45.)

In its Response, the United States argues, "To the extent that Section 2(H) renders state and local government agencies liable for failing to *mandate* immigration verification, it is preempted for the same reasons" that Subsection 2(B) is preempted. (Pl.'s Resp. at 4-5 n.7; *see also* Hr'g Tr. 55:18-21 (Plaintiff's counsel: "Because you have the private right of action here, which is really unprecedented[,] that puts pressure on the way in which the federal act is enforced here . . . .").) However, those arguments do not apply directly to Subsection 2(H). Creating a private right of action for legal residents of Arizona to sue government officials and agencies may impact federal priorities or resources indirectly, but Plaintiff has not alleged sufficient facts to support the conclusion that Subsection 2(H) is preempted on its face. Defendants' Motion is granted with respect to Subsection 2(H).

### 3.     Section 4 and A.R.S. § 13-2319

The Complaint challenges A.R.S. § 13-2319, which Section 4 of S.B. 1070 modified. (*See* Compl. ¶¶ 50-51.) This provision makes it "unlawful for a person to intentionally

1   engage in the smuggling of human beings for profit or commercial purpose." A.R.S. § 13-
2   2319(A). Section 4 of S.B. 1070 added Subsection (E), which states, "Notwithstanding any
3   other law, in the enforcement of this section a peace officer may lawfully stop any person
4   who is operating a motor vehicle if the officer has reasonable suspicion to believe the person
5   is in violation of any civil traffic law." *Id.* § 13-2319(E). "Smuggling of human beings" is
6   defined as:

> the transportation, procurement of transportation or use of property or real property by a person or an entity that knows or has reason to know that the person or persons transported or to be transported are not United States citizens, permanent resident aliens or persons otherwise lawfully in the state or have attempted to enter, entered or remained in the United States in violation of law.

*Id.* § 13-2319(F)(3).

The United States alleges that this provision is an impermissible regulation of immigration because, in combination with Arizona's conspiracy statute, it effectively bans an unlawfully present alien from using public transportation, thus punishing illegal presence, which the federal government has never done. (Compl. ¶ 51; Pl.'s Resp. at 12-13.) The United States further argues that field preemption applies in this instance because A.R.S. § 13-2319 "regulate[s] in an area in which Congress has fully occupied the field." (Pl.'s Resp. at 10-12.) The United States also alleges that Arizona's human smuggling law differs from–and therefore conflicts with–federal law because it is not limited to transportation "in furtherance" of a person's unlawful presence. (Compl. ¶ 51); *see also* 8 U.S.C. § 1324(a)(1)(A)(ii) (making it unlawful to transport or attempt to transport a person *in furtherance of* that person's unlawful entry into or presence in the United States (emphasis added)).

The United States also pointed out in its Motion that federal law does not criminally punish the "smugglee" himself, just the smuggler, and the Arizona provision, in conjunction with the Arizona conspiracy statute, permits prosecution for "self-smuggling." (Pl.'s Mot. at 40-41); *see also United States v. Hernandez-Rodriguez*, 975 F.2d 622, 626 (9th Cir. 1992) (observing that unlawfully present alien passengers in a vehicle "cannot be considered

- 14 -

1 'participants in the offense' because they are not criminally responsible for smuggling under 8 U.S.C. § 1324"); *State v. Barragan-Sierra*, 196 P.3d 879, 885 (Ariz. Ct. App. 2008) (analyzing Arizona human smuggling and conspiracy statutes and concluding that "those statutes, read together, plainly allow the person smuggled to be convicted of conspiracy to commit human smuggling").

The Court finds that Plaintiff has stated a claim that A.R.S. § 13-2319 conflicts with federal immigration law because it is not limited to transportation "in furtherance" of a person's unlawful entry into or presence in the United States. This plausibly conflicts with federal law and sweeps in a broader category of activity than that which has been made unlawful by Congress. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363. 380 (2000) ("[C]onflict is imminent when two separate remedies are brought to bear on the same activity." (internal quotation and citation omitted)); *Chicanos Por La Causa*, 544 F.3d at 982 (explaining principles of conflict preemption). "The fact of a common end hardly neutralizes conflicting means . . . ." *Crosby*, 530 U.S. at 379-80 (citation omitted). The Court finds that the United States has adequately pled a facial challenge to A.R.S. § 13-2319.[4] The allegations in the Complaint and reasonable inferences drawn therefrom are "plausibly suggestive of a claim entitling [the United States] to relief." *See Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1952).[5]

### 4.     Portion of Section 5: A.R.S. § 13-2929

The United States also challenges the portion of Section 5 of S.B. 1070 that created A.R.S. § 13-2929 as being both preempted and in violation of the dormant Commerce Clause. (Compl. ¶¶ 55-56, 61-68.) This provision makes it unlawful for a person "who is in violation of a criminal offense" to: (1) transport or move or attempt to transport or move an

---

[4] As Section 4 has no function if the definition of "smuggling of human beings" is preempted, the Court concludes that the United States has stated a claim that the entirety of A.R.S. § 13-2319 (including A.R.S. § 13-2319(E)) is preempted.

[5] As a result of this conclusion, the Court does not address Plaintiff's other preemption theories related to this provision.

- 15 -

1 alien in Arizona in furtherance of the alien's unlawful presence in the United States; (2) 2 conceal, harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in 3 Arizona; and (3) encourage or induce an alien to come to or live in Arizona. A.R.S. § 13-4 2929(A)(1)-(3). The Court adopts the reasoning set forth in the PI Order with regard to 5 A.R.S. § 13-2929. (*See* PI Order at 27-30.) The Court finds that, even under the more lenient 6 Rule 12(b)(6) standard, the United States' arguments with regard to § 13-2929 are 7 unavailing. By its terms, this provision "does not attempt to regulate who should or should 8 not be admitted into the United States, and it does not regulate the conditions under which 9 legal entrants may remain in the United States." (*Id.* at 28 (citing *De Canas v. Bica*, 424 U.S. 10 351, 355 (1976)).) Therefore, the Court concludes that the United States has not stated a 11 claim that this provision is preempted by federal immigration law for purposes of a facial 12 challenge.

13 The Court further concludes that the United States has not stated a claim that A.R.S. 14 § 13-2929 violates the dormant Commerce Clause on its face. The Complaint does not 15 contain sufficient allegations for the Court to reasonably infer that it is a violation of the 16 dormant Commerce Clause for Arizona to regulate the interstate movement of people who 17 are not lawfully present in the United States. (*See id.* at 29-30.) The behavior being targeted 18 takes place entirely inside the State of Arizona, so it does not directly regulate interstate 19 commerce. *See* A.R.S. § 13-2929(A). The United States argues that this Court's analysis 20 should be guided by *Edwards v. California*, 314 U.S. 160 (1941), in which the Supreme 21 Court struck down a California law making it a crime to bring or assist in bringing into the 22 state any indigent person who was not a California resident. (Pl.'s Resp. at 16-17 (citing 23 *Edwards*, 314 U.S. at 172-73).) However, *Edwards* is distinguishable because, in that case, 24 the underlying conduct (being indigent) was not unlawful. Here, the people being transported 25 or smuggled do not have permission to be in the United States at all, including Arizona.

26 This logic also makes the instant matter distinguishable from *Bowman v. Chicago &* 27 *Northwestern Railway Co.*, 125 U.S. 465, 493 (1888), which the United States cites in 28 support of this argument. In *Bowman*, the Supreme Court found that an Iowa law barring the

1 importation of alcohol by any common carrier was an impermissible regulation of interstate 2 commerce. *Id.* Plaintiff argues that this case stands for the proposition that a state may not 3 regulate anything that moves in interstate commerce, including an "illegal" commodity. (Pl.'s 4 Resp. at 16 n.28, 17.) However, the Iowa statute *directly* regulated a good moving in 5 interstate commerce: alcohol. *Edwards*, 125 U.S. at 493. Also, while the sale of alcohol 6 without a license was illegal in Iowa at the time of the decision, it was not unlawful in the 7 United States to transport alcohol, the activity undertaken by the common carrier. Here, it 8 is illegal under federal law to transport, harbor, or smuggle a person in furtherance of his or 9 her illegal presence. *See* 8 U.S.C. § 1324(a)(1)(A). Finally, the United States cites no 10 authority supporting the proposition that unlawfully present aliens must be permitted to travel 11 from state to state. (*See* PI Order at 29 n.19.) Therefore, the Court grants Defendants' Motion 12 with respect to the portion of Section 5 creating A.R.S. § 13-2929.

### 5. Portions of Section 5: A.R.S. § 13-2928(A)-(B)

14 The Complaint does not specifically reference the portions of Section 5 of S.B. 1070 15 that create A.R.S. § 13-2928(A) and (B). (*See* Compl. ¶¶ 52-56.) To the extent that the 16 Complaint challenges these provisions, the Court finds that it fails to state a claim that 17 plausibly entitles the United States to relief because it does not make any specific allegations 18 regarding those subsections.

### III.  CONCLUSION

20 For the foregoing reasons, the Court grants Defendants' Motion with respect to: (1) 21 Section 1; (2) Subsections 2(A) and (C) through (L); (3) the portion of Section 5 creating 22 A.R.S. § 13-2929; and (4) the portion of Section 5 creating A.R.S. § 13-2928(A) and (B). 23 The Court denies Defendants' Motion with respect to: (1) the portion of Section 2 creating 24 A.R.S. § 11-1051(B); (2) Section 3 creating A.R.S. § 13-1509; (3) the portion of Section 5 25 creating A.R.S. § 13-2928(C); (4) Section 6 creating A.R.S. § 13-3883(A)(5); and (5) A.R.S. 26 § 13-2319 (including Section 4). The partial dismissal of the Complaint is made without 27 prejudice. Should Plaintiff choose to amend the Complaint, it must do so within 30 days of 28 the date of entry of this Order.

**IT IS ORDERED** granting in part and denying in part Defendants State of Arizona and Janice K. Brewer's Motion to Dismiss (Doc. 81) and granting Plaintiff 30 days including the date of entry of this Order to file any amended Complaint.

DATED this 10th day of December, 2010.

_____
Susan R. Bolton
United States District Judge